UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------X

GARY GILL,

                                        *Plaintiff,*

                        -against-

THE CITY OF NEW YORK, ASSISTANT DISTRICT ATTORNEY
PETER LOMP, DETECTIVE CHRISTOPHER DREW (SHIELD #3787)
DETECTIVE CARL SHEPARD (TAX ID #903227), DETECTIVES/
POLICE OFFICERS JOHN DOE #1-4 (the name "John Doe" being
fictitious as the true name is presently unknown), individually and in their
official capacity as New York City Police Officers, AND JOHN DOE #5-
8(the name "John Doe" being fictitious as the true name is presently
unknown), individually and in their official capacity as New York City agents,
representatives and/or employees),

                                        *Defendants.*

------------------------------------------------------------------------------X

### 1ST AMENDED COMPLAINT

#### JURY TRIAL DEMANDED

*Civil Action No.*_____

Plaintiff **GARY GILL,** by his attorneys **NOVO LAW FIRM, PC,** complaining of
Defendants **THE CITY OF NEW YORK, ASSISTANT DISTRICT ATTORNEY PETER
LOMP, DETECTIVE CHRISTOPHER DREW (SHIELD #3787), DETECTIVE CARL
SHEPARD (TAX ID #903227), DETECTIVES/POLICE OFFICERS JOHN DOE# 1-4,
AND NYC JOHN DOE #5-8** respectfully alleges, upon information and belief:

#### PRELIMINARY STATEMENT

1.     This is a civil rights action in which Plaintiff **GARY GILL** seeks relief for Defendants'
violation of his rights secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983 and 42
U.S.C. § 1988, and of rights secured by the First, Fourth and Fourteenth Amendments to the
United States Constitution, and of rights secured under the laws and Constitution of the
State of New York.  Plaintiff seeks damages, compensatory and punitive, affirmative and

equitable relief, an award of costs, interest and attorney's fees, and such other and further relief as this Court deems equitable and just.

## JURISDICTION AND VENUE

2.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343 and § 1331, this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

3.  Jurisdiction is also invoked herein pursuant to the First, Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

4.  Plaintiff respectfully requests that this Court exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any state court causes of action that arise from a common nucleus of operative facts that give rise to the federally based causes of action pleaded herein, and as against all parties that are so related to claims in this action within the original jurisdiction of this court that are formed as part of the same case or controversy.

5.  Venue herein is proper for the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391 (a), (b) and (c).

## JURY DEMAND

6.  Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

7.  Upon information and belief and within the time prescribed by law, a sworn Notice of Claim stating, among other things, the time when and the place where the injuries and damages were sustained, together with Plaintiff's demands for adjustment thereof was duly served on Plaintiff's behalf on the Comptroller of Defendant **THE CITY OF NEW YORK** and that, thereafter, said Comptroller for Defendant **THE CITY OF NEW YORK** refused or neglected for more than thirty (30) days, and up to the commencement of this action, to

make any adjustment or payment thereof, and that, thereafter, and within the time provided by law, this action was commenced.

8.      Upon information and belief, pursuant to General Municipal Law §50(h), a hearing was held at the office of a designated agent.

## PARTIES

9.      Plaintiff is 44 years old and at all times hereinafter mentioned was, and still is, a citizen of the United States residing at 351 East 32nd Street, County of Kings, City of Brooklyn and State of New York.

10.     Defendant **THE CITY OF NEW YORK** was, and still is, at all times relevant herein, a municipal corporation duly incorporated and existing under and by virtue of the laws of the State of New York.

11.     Defendant **THE CITY OF NEW YORK** was, and still is, at all times relevant herein, a municipal entity created and authorized under the laws of the State of New York. It is authorized to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant **THE CITY OF NEW YORK** assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by New York City Police Department (NYPD).  Defendant **THE CITY OF NEW YORK** operates the NYPD, a department or agency of Defendant **THE CITY OF NEW YORK** and is responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein.

12.     Defendant **ASSISTANT DISTRICT ATTORNEY PETER LOMP** was, and still is, at all times relevant herein, duly appointed and acting agent, servant, and employee of Queens

County District Attorney's Office a municipal agency of Defendant **THE CITY OF NEW YORK**

13. Defendants **DETECTIVE CHRISTOPHER DREW (SHIELD #3787), DETECTIVE CARL SHEPARD (TAX ID #903227), DETECTIVES/POLICE OFFICERS JOHN DOE# 1-4** were, and still are, at all times relevant herein, duly appointed and acting officers, agents, servants, and employees of New York City Police Department a municipal agency of Defendant **THE CITY OF NEW YORK**.

14. Defendants **DETECTIVE CHRISTOPHER DREW (SHIELD #3787), DETECTIVE CARL SHEPARD (TAX ID #903227), DETECTIVES/POLICE OFFICERS JOHN DOE# 1-4 AND JOHN DOE #5-8** were, and still are, at all times relevant herein, acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of Defendant **THE CITY OF NEW YORK,** were acting for, and on behalf of, and with the power and authority vested in them by Defendants **THE CITY OF NEW YORK** and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties. Defendants **DETECTIVE CHRISTOPHER DREW (SHIELD #3787), DETECTIVE CARL SHEPARD (TAX ID #903227)** are sued in their individual and official capacities.

15. At all times relevant Defendants **JOHN DOE #1** through 4 were police officers, detectives or supervisors employed by the NYPD.

16. Plaintiff does not know the real names and shield numbers of Defendants **JOHN DOE #1** through 4.

17.     At all times relevant herein, Defendants **JOHN DOE #1** through 4 were acting as agents, servants and employees of Defendant THE CITY OF NEW YORK and the NYPD. Defendants **JOHN DOE #1** through 4 are sued in their individual and official capacities.

18.     At all times relevant Defendants **JOHN DOE #5** through 8 were agents, representatives, and/or otherwise employed by Defendant **THE CITY OF NEW YORK**.

19.     Plaintiff does not know the real names and addresses of Defendants **JOHN DOE #5** through **8**.

20.     At all times relevant herein, Defendants **JOHN DOE #5** through 8 were acting as agents, representatives servants and employees of Defendant **THE CITY OF NEW YORK**. Defendants **JOHN DOE #5** through 8 are sued in their individual and official capacities.

21.     At all times relevant herein, all individual defendants were acting under color of state law.

## STATEMENT OF FACTS

22.     Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

23.     Upon information and belief an alleged murder of a Mr. Simon Merriman occurred on or about December 20, 2008.

24.     Upon information and belief, it was not until September 21, 2009 while Plaintiff was in Philadelphia, Pennsylvania when he was arrested and brought to the local Precinct where he was detained and held for approximately one month.

25.     During this time, he was a victim of police misconduct, police brutality, was falsely arrested and falsely detained for a crime he did not commit.

26.     Upon information and belief, at no point in time did **GARY GILL** resist arrest or disobey arresting officers' commands.

27. On or about October 22, 2009, Plaintiff **GARY GILL** was extradited into the custody of detectives of the 105th Precinct located in the County of Queens, State of New York.

28. Plaintiff was thereafter brought to NYPD 105th Precinct and charged with the above-mentioned murder and other charges related to homicide, which occurred on December 20, 2008.

29. Upon information and belief, after spending four (4) hours in the Precinct Plaintiff was transferred to Central Booking, criminally processed and placed in dirty, overcrowded and infested cell where he spent approximately sixteen (16) hours, until next morning October 22, 2009 when he was taken in front of the judge and arraigned.

30. Upon information and belief, after seeing judge Plaintiff **GARY GILL** was transported to Vernon C. Bain "The Boat" Correctional Center where he spent approximately four (4) days, until he was transferred to Riker's Island Correctional facility.

31. Upon information and belief, during his incarceration in Riker's Island Plaintiff was moved to the different housing facilities within the institution.

32. Upon information and belief, Mr. Gill was denied his right to appear for a Grand Jury.

33. Upon information and belief, Mr. Gill was denied his right to present witnesses on his behalf.

34. Upon information and belief, Plaintiff **GARY GILL's** trial was adjourned numerous times for several years.

35. In fact, as of November 28, 2012, Mr. Gill's case had been adjourned almost forty (40) times produced to Court almost every time and yet had actually been brought before a Judge no more than three (3) times!

36. The Criminal Prosecution continued causing Plaintiff to be remanded at Riker's Island awaiting trial through 2014 (more than five (5) years).

37.   The trial was unnecessarily delayed and there were no reasons assigned by the defendants to justify the delay.

38.   The continuous delays maximized Mr. Gill's anxieties and concerns and continued to impair the ability of the accused, Mr. Gill to defend himself.

39.   As a result of the delay, Mr. Gill was unable to adequately prepare his case.

40.   Upon information and belief, the defendants intentionally delayed the trial for purpose of the release of a prisoner, "Junias Desruisseaux" who was the Prosecution's only witness and a party to a cooperation agreement.

41.   Upon information and belief, the above-mentioned cooperation agreement was put into place on or about September 27, 2013 yet the trial still did not begin until more than one (1) year later.

42.   Upon information and belief, there were no implied or explicit consents to any delays by Mr. Gill.

43.   Upon information and belief, the defendants' unreadiness for trial was directly and/or mostly attributable to "the People" and thus chargeable to the defendants for speedy trial purposes.

44.   Upon information and belief, there was a lack of prosecutorial diligence.

45.   Upon information and belief, Plaintiff's trial did not start until on or around December 1, 2014 and lasted for approximately five (5) days.

46.   Upon information and belief, during the trial, there was not a scintilla of evidence proving Plaintiff **GARY GILL's** involvement in the above mentioned incident.

47.   Upon information and belief, there was misconduct including misplacement of bullet(s) prior to trial.

48.   Upon information and belief, without Junias Desruisseaux, the defendants had no case.  IN addition to being self-contradictory, there was no other evidence or witness corroborating this witness' account.

49.   At the conclusion of trial, Plaintiff was found not guilty and acquitted of all charges on December 8, 2014.

50.   Upon information and belief, as a result of the foregoing, Plaintiff was deprived of the opportunity to pursue his career.

51.   Upon information and belief, as a result of foregoing Plaintiff **GARY GILL** was stripped of U.S. "Green Card" Residency.

52.   Upon information and belief, his consulate was notified on or about July 2, 2014.

53.   Upon information and belief, Plaintiff was deprived of his rights to a familial relationship with his six (6) children and spouse.

54.   Upon information and belief, Plaintiff was wrongfully incarcerated for approximately sixty-two (62) months.

**AS AND FOR A FIRST CAUSE OF ACTION**
**DEPRIVATION OF RIGHTS UNDER THE**
**UNITED STATES CONSTITUTION and 42 U.S.C. § 1983**
**ASSISTANT DISTRICT ATTORNEY PETER LOMP, DETECTIVE CHRISTOPHER DREW (SHIELD #3787), DETECTIVE CARL SHEPARD (TAX ID #903227), DETECTIVES/POLICE OFFICERS JOHN DOE# 1-4 AND NYC JOHN DOE #5-8**

55.   Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

56.   By their conduct and actions in arresting, searching, imprisoning, failing to intercede on behalf of Plaintiff and in failing to protect him from the unjustified and unconstitutional treatment he received at the hands of Defendants **THE CITY OF NEW YORK, ASSISTANT DISTRICT ATTORNEY PETER LOMP, DETECTIVE CHRISTOPHER DREW (SHIELD #3787), DETECTIVE CARL SHEPARD (TAX**

ID #903227),  DETECTIVES/POLICE OFFICERS JOHN DOE# 1-4 AND NYC

JOHN DOE #5-8  acting with animus, and under color of law and without lawful

justification, intentionally, maliciously, and with deliberate indifference to and/or a reckless

disregard for the natural and probable consequences of their acts, caused injury and damage

in violation of Plaintiff's due process clause and constitutional rights as guaranteed under 42

U.S.C. § 1983 and the United States Constitution, including its Fourth and Fourteenth

Amendments.

57.    As a result of the foregoing, Plaintiff was deprived of his liberty, suffered specific

psychological and emotional injuries and emotional distress, great humiliation, costs and

expenses, and was otherwise damaged and injured.

**AS AND FOR A SECOND CAUSE OF ACTION**
**MALICIOUS PROSECUTION UNDER THE**
**UNITED STATES CONSTITUTION and 42 U.S.C. § 1983**

58.    Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the

same force and effect as though fully stated herein.

59.    By the actions described above, Defendants **THE CITY OF NEW YORK, ASSISTANT**

**DISTRICT ATTORNEY PETER LOMP, DETECTIVE CHRISTOPHER DREW**

**(SHIELD #3787),DETECTIVE CARL SHEPARD (TAX ID #903227),**

**DETECTIVES/POLICE OFFICERS JOHN DOE# 1-4 AND NYC JOHN DOE**

**#5-8,** initiated a prosecution against Plaintiff Mr. Gill.

60.    By the actions described above, Defendants **THE CITY OF NEW YORK, ASSISTANT**

**DISTRICT ATTORNEY PETER LOMP, DETECTIVE CHRISTOPHER DREW**

**(SHIELD #3787), DETECTIVE CARL SHEPARD (TAX ID #903227),**

**DETECTIVES/POLICE OFFICERS JOHN DOE# 1-4 AND NYC JOHN DOE**

**#5-8,** lacked probable cause to believe the proceeding could succeed.

61.    By the actions described above, Defendants **THE CITY OF NEW YORK, ASSISTANT DISTRICT ATTORNEY PETER LOMP, DETECTIVE CHRISTOPHER DREW (SHIELD #3787), DETECTIVE CARL SHEPARD (TAX ID #903227), DETECTIVES/POLICE OFFICERS JOHN DOE# 1-4 AND NYC JOHN DOE #5-8,** caused Plaintiff to be maliciously prosecuted without any probable cause, without reasonable suspicion, without any proper claims, without any right or authority to do so, illegally and with malice.

62.    Defendants **THE CITY OF NEW YORK, ASSISTANT DISTRICT ATTORNEY PETER LOMP, DETECTIVE CHRISTOPHER DREW (SHIELD #3787), DETECTIVE CARL SHEPARD (TAX ID #903227), DETECTIVES/POLICE OFFICERS JOHN DOE# 1-4 AND NYC JOHN DOE #5-8,** arrested and issued legal process in order to obtain collateral objectives outside the legitimate ends of the legal process and intimidated Plaintiff Mr. Gill for their personal interest and further to prevent Plaintiff from disclosing the aforementioned evidence of their misconduct.

63.    The prosecution was ultimately terminated in favor of Plaintiff Mr. Gill.

64.    The investigation and prosecution were palpably improper.

65.    The malicious prosecution continued from 2009 through 2014 and the police officers and detectives of the City of New York were active participants for the prosecution of the pre-trial (if any), and trial.

66.    The witness produced had an invested interest to fabricate his story.

67.    As a result of the foregoing, Plaintiff Mr. Gill was deprived of his liberty, suffered specific psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

## AS AND FOR A THIRD CAUSE OF ACTION
## NEW YORK STATE CLAIM OF MALICIOUS PROSECUTION

68. Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

69. By the actions described above, Defendants **THE CITY OF NEW YORK, ASSISTANT DISTRICT ATTORNEY PETER LOMP, DETECTIVE CHRISTOPHER DREW (SHIELD #3787), DETECTIVE CARL SHEPARD (TAX ID #903227), DETECTIVES/POLICE OFFICERS JOHN DOE# 1-4 AND NYC JOHN DOE #5-8,** caused Plaintiff to be maliciously prosecuted without any probable cause, without reasonable suspicion, without any proper claims, without any right or authority to do so, illegally and with malice.

70. Defendants **THE CITY OF NEW YORK, ASSISTANT DISTRICT ATTORNEY PETER LOMP, DETECTIVE CHRISTOPHER DREW (SHIELD #3787), DETECTIVE CARL SHEPARD (TAX ID #903227), DETECTIVES/POLICE OFFICERS JOHN DOE# 1-4 AND NYC JOHN DOE #5-8** arrested and issued legal process in order to obtain collateral objectives outside the legitimate ends of the legal process and intimidating Plaintiff for their personal interest and further to prevent Plaintiff from disclosing the aforementioned evidence of their misconduct.

71. Defendants acted with intent to do harm to Plaintiff without excuse or justification.

72. The legal process was terminated in favor of Plaintiff.

73. A timely Notice of Claim was filed with the City of New York.

74. The investigation and prosecution was palpably improper.

75. Upon information and belief, Defendant **ASSISTANT DISTRICT ATTORNEY PETER LOMP** acted as an investigator not solely an advocate.

76. The malicious prosecution continued from 2009 through 2014 and the police officers and

detectives of the City of New York were active participants for the prosecution of the pre-trial (if any), and trial.

77.    The witness produced had an invested interest to fabricate his story.

78.    As a result of the foregoing, Plaintiff was deprived of his liberty, suffered specific psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

## AS AND FOR A FOURTH CAUSE OF ACTION
### VIOLATION OF SUBSTANTIVE DUE PROCESS

79.    Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as thought fully stated herein.

80.    Defendants **THE CITY OF NEW YORK, ASSISTANT DISTRICT ATTORNEY PETER LOMP, DETECTIVE CHRISTOPHER DREW (SHIELD #3787), DETECTIVE CARL SHEPARD (TAX ID #903227), DETECTIVES/POLICE OFFICERS JOHN DOE #1-4 AND NYC JOHN DOE #5-8,** individually and collectively are liable pursuant to 42 U.S.C. § 1983 for abuses against Plaintiff that shock the conscience in violation of the Fourteenth Amendment to the United States Constitution.

81.    Defendants **THE CITY OF NEW YORK, ASSISTANT DISTRICT ATTORNEY PETER LOMP, DETECTIVE CHRISTOPHER DREW (SHIELD #3787), DETECTIVE CARL SHEPARD (TAX ID #903227), DETECTIVES/POLICE OFFICERS JOHN DOE# 1-4 AND NYC JOHN DOE #5-8,** individually and collectively are liable for abuses against Plaintiff that shock the conscience in violation of Article 1, § 5 of the New York State Constitution.

82.    Defendants **THE CITY OF NEW YORK, ASSISTANT DISTRICT ATTORNEY PETER LOMP, DETECTIVE CHRISTOPHER DREW (SHIELD #3787), DETECTIVE CARL SHEPARD (TAX ID #903227) AND DETECTIVES/POLICE**

**OFFICERS JOHN DOE# 1-4 AND NYC JOHN DOE #5-8,** individually and collectively are liable for abuses against Plaintiff that shock the conscience in violation of New York law, rules and regulations.

83. The individual defendants issued legal process to place Plaintiff under arrest.

84. As a result of the foregoing, Plaintiff was deprived of his liberty, suffered specific psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

<u>**AS AND FOR A FIFTH CAUSE OF ACTION**</u>
**VIOLATION OF SIXTH AMENDMENT and 14th AMENDMENT**
**RIGHT TO SPEEDY TRIAL**

85. Plaintiff Mr. Gill repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

86. Plaintiff Mr. Gill was not afforded the protections of the speedy trial provision of the sixth Amendment to the U.S. Constitution.[1]

87. Mr. Gill's speedy trial right was denied in this case due to the (1) length of delay, (2) the reason for the delay, (3) Mr. Gill's assertion of his right and (4) the prejudice he endured.[2]

88. The delay between Mr. Gill's indictment and his trial violated his right to a speedy trial because Defendants were to blame for the delay, Mr. Gill asserted his right to a speedy trial in many letters to the presiding Judge and other various organizations and the delay presumptively prejudiced his ability to prepare an adequate defense as witnesses went

---

[1] The primary purposes of the constitutional speedy trial rule are to protect the criminal defendant's right to present a defense by requiring trial not so long after the events as to create the danger of faded memories, loss or destruction of evidence, and the psychological repose that comes with the lack of prosecution of stale claims. Furthermore, "[t]he obligation is on the prosecutor to move the trial promptly and no demand by the accused is required to activate this obligation. "*People v. Minicone*, 28 N.Y.2d 279, 281 (1971).

[2] *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192, 33 L. Ed. 2d 101 (1972).

missing, memories faded over time and evidence was lost. 3

89.   Upon information and belief, Mr. Gill did not know of the charges against him until his arrest.

90.   Upon information and belief, Mr. Gill actively demanded, pleaded and requested a speedy trial throughout the course of his imprisonment.

91.   In the instant case, the prosecution did not prosecute with "customary promptness" and the interval between the accusation and the trial was thus, presumptively prejudicial.  The delay was attributable to the lack of readiness on the part of the prosecution.

92.   With regards to the nature of the charge, because a charge of murder carries a life-ruining consequence with a potential conviction, there should be a heightened standard to insure that Mr. Gill was not impeded from presenting an adequate defense, and here, the delay was due to the delay.  4

93.   Mr. Gill was incarcerated for over five (5) years.  As a result of the lengthy delay, Mr. Gill suffered severe anxiety and restriction on his liberty.

94.   There were no demonstrated efforts to secure witnesses for trial by the prosecution.  In fact, the witness (who was given a cooperation agreement whereby his testimony was exchanged for a lesser sentence) did not sign this agreement until many years after Mr. Gill's arrest.

95.   This unreasonable delay between formal accusation and trial produced more than one sort of harm, including "oppressive pretrial incarceration," "anxiety and concern of the accused,"

---

3 Because of the lengthy hiatus between the commission of the crime, arrest, and trial, because the defense lost access to vital exculpatory evidence during the delay, and because of the substantial danger that an innocent man has been convicted, fundamental fairness requires that the judgment be vacated and the indictment be dismissed.  *THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. Larry ROBINSON, Appellant.,* 1991 WL 11649059 (N.Y.A.D. 2 Dept.), 45.

4 *See, People v Taranovich*, 37 NY2d 442, 443 [1975], 37 N.Y.2d at 446; *see also, People v. Brown*, 117 A.D.2d 978, 979 (4th Dep't 1986) (murder charge is not a "complex case" requiring extended time to prepare).

and "the possibility that the [accused's] defense will be impaired" by dimming memories and loss of exculpatory evidence.5

96.    While Mr. Gill was not arrested until September of 2009, the period between the commission of the crime (December 20, 2008) and Mr. Gill's arrest (September 21, 2009) also must be taken into consideration in determining the prejudice to Mr. Gill. *People v. Singer*, 44 N.Y.2d 241, 252 (1978).6

97.    As a result of the foregoing, Plaintiff was deprived of his liberty, suffered a loss of quality and/or enjoyment of life, economic injury, psychological injury and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

## AS AND FOR A SIXTH CAUSE OF ACTION
## DEPRIVATION OF CONSTITUTIONAL RIGHT TO A FAIR TRIAL

98.    Plaintiff Mr. Gill repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

99.    The illegal and improper investigation created by Defendants established false information likely to influence a jury's decision and said information was forwarded to the prosecution. The Defendants engaged in an unlawful, unreasonable, and arbitrary investigation, which lead to Plaintiff's arrest. The defendants deviated from standard protocols. Thus, Mr. Gill's Constitutional Right to a Fair Trial was violated and the harm occasioned by this violation is an action for damages under 42 USC § 1983. Here, a reasonable jury could find, based on

---

5 *Barker*, 407 U.S., at 532, 92 S.Ct., at 2193; see also *Smith v. Hooey*, 393 U.S. 374, 377–379, 89 S.Ct. 575, 576–578, 21 L.Ed.2d 607 (1969); *United States v. Ewell*, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627 (1966)

6 But even excluding the pre-arrest period, Mr. Gill was not tried until more than five (5) years after his arrest, which impaired his ability to present a defense. *See*, *People v. Johnson*, 38 N.Y.2d 271 (1975) (Homicide indictment dismissed due to 18 month delay and loss of "potential" defense *44 witness); *People v. Mason*, 125 A.D.2d 595 (2d Dep't 1986) (Lazer, J.) (Same: 21 month delay between arrest and trial and loss of "potential" alibi witness"); *People v. Brown*, 117 A.D.2d 978 (4th Dep't 1986) (Same: 16 month delay and loss of "potential" defense witness); cf.*People v. Santiago*, 209 A.D.2d 885 (3d Dep't 1994) (Same: 64 month delay - even without showing of prejudice).

the evidence, that defendants, under the color of state law, violated the plaintiffs' clearly established constitutional rights by conspiring to fabricate one witness' story, which was almost certain to influence a jury's verdict.

100. That the plaintiff did not know and could not have known that the investigation was illegal and/or improper until the favorable termination of the proceedings.

101. The plaintiff was subjected to deprivation of Constitutional Right to a Fair Trial in violation of his rights as guaranteed under the Fourteenth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 USC § 1983.\

102. As a result of the lengthy delay, Mr. Gill suffered severe anxiety and restriction on his liberty.

103. As a result of the foregoing, Plaintiff was deprived of his liberty, suffered a loss of quality and/or enjoyment of life, economic injury, psychological injury and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### DERELICTION OF DUTY, DEPRAVED INDIFFERENCE and FAILURE TO INTERCEDE

104. Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

105. Defendants **THE CITY OF NEW YORK, ASSISTANT DISTRICT ATTORNEY PETER LOMP, DETECTIVE CHRISTOPHER DREW (SHIELD #3787), DETECTIVE CARL SHEPARD (TAX ID #903227), DETECTIVES/POLICE OFFICERS JOHN DOE #1-4 AND NYC JOHN DOE #5-8,** were under a duty of safeguarding the public and ensuring the appropriate execution of Defendant's role.

106. Plaintiff duly relied on Defendants' fulfillment of their New York City Policing duties.

107. Defendants had an affirmative duty to intercede when Plaintiff's constitutional rights were being violated in Defendants' presence.

108.  At the time of the incidents, Defendants **THE CITY OF NEW YORK, ASSISTANT DISTRICT ATTORNEY PETER LOMP, DETECTIVE CHRISTOPHER DREW (SHIELD #3787), DETECTIVE CARL SHEPARD (TAX ID #903227), DETECTIVES/POLICE OFFICERS JOHN DOE #1-4 AND NYC JOHN DOE #5-8,** were observing and aware of the wrongful acts against Plaintiff.

109.  At the time of the incident, Defendants **THE CITY OF NEW YORK, ASSISTANT DISTRICT ATTORNEY PETER LOMP, DETECTIVE CHRISTOPHER DREW (SHIELD #3787), DETECTIVE CARL SHEPARD (TAX ID #903227), DETECTIVES/POLICE OFFICERS JOHN DOE #1-4 AND NYC JOHN DOE #5-8,** neglected to intervene on Plaintiff's behalf in dereliction of their duty to Plaintiff and in depraved indifference to Plaintiff's well-being.

110.  Defendants **THE CITY OF NEW YORK, ASSISTANT DISTRICT ATTORNEY PETER LOMP, DETECTIVE CHRISTOPHER DREW (SHIELD #3787), DETECTIVE CARL SHEPARD (TAX ID #903227), DETECTIVES/POLICE OFFICERS JOHN DOE #1-4 AND NYC JOHN DOE #5-8,** violated Plaintiff's constitutional rights when they failed to intercede and prevent the violation or further violation of Plaintiff's constitutional rights and the injuries or further injuries caused as a result of said failure.

111.  Defendants were present but did not necessarily actively participate in the aforementioned unlawful conduct observed, had an opportunity to prevent such conduct, had a duty to intervene and failed to do so.

112.  As a result of the foregoing, Plaintiff was deprived of his liberty, suffered a loss of quality and/or enjoyment of life, economic injury, psychological injury and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

## AS AND FOR A EIGHTH CAUSE OF ACTION
### NEGLIGENCE

113.   Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

114.   Defendant **THE CITY OF NEW YORK, ASSISTANT DISTRICT ATTORNEY PETER LOMP, DETECTIVE CHRISTOPHER DREW (SHIELD #3787), DETECTIVE CARL SHEPARD (TAX ID #903227), DETECTIVES/POLICE OFFICERS JOHN DOE #1-4 AND NYC JOHN DOE #5-8,** negligently caused emotional injuries and otherwise damaged Plaintiff. The acts and conduct of Defendant were the direct and proximate cause of injury to Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

115.   There was official negligence in bringing Mr. Gill, the accused to trial.  Even if Mr. Gill cannot specifically demonstrate exactly how the delay to trial has prejudiced him, there is still negligence in the unacceptable reasons behind delaying the criminal prosecution of Mr. Gill. [7]

116.   There is a persistent neglect in concluding a criminal prosecution in this case.  Moreover, this negligence has threatened and did threaten the fairness of the accused's trial.

117.   As a result of the foregoing, Plaintiff was deprived of his liberty, suffered specific psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

## AS AND FOR A NINTH CAUSE OF ACTION
### NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION and TRAINING

118.   Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the

---

7 *Doggett v United States,* 505 US 647, 656-57, 112 S Ct 2686, 2693, 120 L Ed 2d 520 [1992].

same force and effect as though fully stated herein.

119. Defendant **THE CITY OF NEW YORK** negligently hired, screened, retained, supervised and trained Defendants **THE CITY OF NEW YORK, ASSISTANT DISTRICT ATTORNEY PETER LOMP, DETECTIVE CHRISTOPHER DREW (SHIELD #3787), DETECTIVE CARL SHEPARD (TAX ID #903227), DETECTIVES/POLICE OFFICERS JOHN DOE #1-4 AND NYC JOHN DOE #5-8,** and its employees.

120. A timely Notice of Claim was filed with the City of New York.

121. As a result of the foregoing, Plaintiff was deprived of his liberty, suffered specific psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

## AS AND FOR A TENTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL HARM

122. Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

123. Defendants **THE CITY OF NEW YORK, ASSISTANT DISTRICT ATTORNEY PETER LOMP, DETECTIVE CHRISTOPHER DREW (SHIELD #3787), DETECTIVE CARL SHEPARD (TAX ID #903227), DETECTIVES/POLICE OFFICERS JOHN DOE #1-4 AND NYC JOHN DOE #5-8,** negligently caused emotional distress and damage to Plaintiff.  The acts and conduct of Defendant were the direct and proximate cause of emotional injury to Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

124. As a result of the lengthy delay, Mr. Gill suffered severe anxiety and restriction on his liberty.

125. As a result of the foregoing, Plaintiff was deprived of his liberty, suffered specific psychological  and emotional injuries and emotional distress, great humiliation, costs and

expenses, and was otherwise damaged and injured.

## AS AND FOR A ELEVENTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL HARM AND/OR DISTRESS

126.　Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

127.　Under the color of state law, Defendants **THE CITY OF NEW YORK, ASSISTANT DISTRICT ATTORNEY PETER LOMP, DETECTIVE CHRISTOPHER DREW (SHIELD #3787), DETECTIVE CARL SHEPARD (TAX ID #903227), DETECTIVES/POLICE OFFICERS JOHN DOE #1-4 AND NYC JOHN DOE #5-8,** intentionally caused continuous emotional distress and damage to Plaintiff.

128.　The acts and conduct of Defendants were the direct and proximate cause of continuous emotional distress emotional injury to Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

129.　Upon information and belief, Defendants committed multiple acts against Plaintiff, which invaded his interests and inflicted injuries upon him throughout all stages of investigation, the continuous detention and the hearings, and trials, which cumulatively amounted to intentional infliction of emotional harm and/or distress.

130.　A timely Notice of Claim was filed with the City of New York.

131.　The favorable termination of the proceedings was the crux of his claim.

132.　As a result of the lengthy delay, Mr. Gill suffered severe anxiety and restriction on his liberty.

133.　As a result of the foregoing, Plaintiff was deprived of his liberty, suffered specific physical injury, psychological injury and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

## AS AND FOR A TWELFTH CAUSE OF ACTION
### DEPRIVATION OF RIGHTS UNDER THE

### UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983
### BY THE CITY OF NEW YORK
### CLAIM FOR *MONELL LIABILITY*

134.   Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

135.   At all times material to this complaint, Defendant **THE CITY OF NEW YORK** acting through its police department and through Defendants, **ASSISTANT DISTRICT ATTORNEY PETER LOMP, DETECTIVE CHRISTOPHER DREW (SHIELD #3787), DETECTIVE CARL SHEPARD (TAX ID #903227), DETECTIVES/POLICE OFFICERS JOHN DOE# 1-4 AND NYC JOHN DOE #5-8,** had in effect actual and/or *de facto* policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

136.   At all times material to this complaint, Defendant **THE CITY OF NEW YORK** acting through its police department and through Defendants **ASSISTANT DISTRICT ATTORNEY PETER LOMP, DETECTIVE CHRISTOPHER DREW (SHIELD #3787),DETECTIVE CARL SHEPARD (TAX ID #903227), DETECTIVES/POLICE OFFICERS JOHN DOE# 1-4 AND NYC JOHN DOE #5-8,** had in effect and/or *de facto* policies, practices, customs and usages of failing to properly train, screen, supervise and discipline employees and police officers, and of failing to inform the individual Defendants' supervisors of the need to train, screen, supervise and discipline said Defendants.  The policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

137.   Defendant **THE CITY OF NEW YORK** acting through its police department, department of correction and through Defendants **THE CITY OF NEW YORK, ASSISTANT DISTRICT ATTORNEY PETER LOMP, DETECTIVE CHRISTOPHER DREW**

(SHIELD #3787), DETECTIVE CARL SHEPARD (TAX ID #903227), DETECTIVES/POLICE OFFICERS JOHN DOE# 1-4 AND NYC JOHN DOE #5-8, being aware that such lack of training, screening, supervision, and discipline leads to improper conduct, acted with deliberate indifference in failing to establish a program of effective training, screening, supervision and discipline. Defendant **THE CITY OF NEW YORK** being aware that the persistent and substantial risk of improper detention of persons based upon insufficient or incorrect information, and effective training, screening, supervision and discipline would lessen the likelihood of such occurrences. There are recurrent circumstances which involve such potential danger to the constitutional rights of citizens, more specifically Plaintiff and which are officially tolerated by Defendant **THE CITY OF NEW YORK**. Such policies, practices, customs or usages were a direct and proximate cause of the conduct alleged herein and otherwise a direct and proximate cause of the harm/damages alleged herein, in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its Fourth and Fourteenth Amendments.

138. As a result of the foregoing, Plaintiff was deprived of his liberty, suffered specific physical, psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

139. In this case, there was: Police witnesses failing to make full and complete statements -- witness tampering and/or intimidation; Detectives withholding evidence and/or misrepresenting or falsifying evidence; Overall inadequate police work and inadequate prosecutorial work-up of the case; and no warrant for Mr. Gill's arrest, at least none that Plaintiff was ever showed.

140. The acts complained of were carried out by the aforementioned defendants in their

capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the City and NYPD, all under the supervision of ranking officers of the NYPD.

141.    The aforementioned customs, practices, procedures and rules of the City and NYPD include, but are not limited to: 1) arresting persons known to be innocent in order to meet "productivity goals"; 2) falsely swearing out criminal complaints and/or lying and committing perjury during sworn testimony to protect other officers and meet productivity goals; 3) failing to supervise, train, instruct and discipline police officers thereby encouraging their misconduct and exhibiting deliberate indifference towards the constitutional rights of persons within the officers' jurisdiction; 4) discouraging police officers from reporting the corrupt or unlawful acts of other officers; 5) retaliating against officers who report police misconduct; and 6) failing to intervene to prevent the above-mentioned practices when they reasonably could have been prevented with proper supervision.

142.    At the time of the aforementioned constitutional violations, the **THE CITY OF NEW YORK** and NYPD were and had been on notice of such unconstitutional conduct, customs, and de facto policies, such that the failure of City and NYPD to take appropriate remedial action amounted to deliberate indifference to the constitutional rights of persons with whom the police come in contact. In light of the extensive pattern of well-settled, pervasive customs and policies causing constitutional violations, documented in part infra, the need for more effective supervision and other remedial measures was patently obvious, but the **THE CITY OF NEW YORK** and NYPD and DA made no meaningful attempt to prevent future constitutional violations.

143.    The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented by the following civil

rights actions and parallel prosecutions of police officers:

a) <u>Colon v. City of New York</u>, 9-CV-0008 (JBW)(E.D.N.Y) (in an Order dated November 29, 2009 denying the City's motion to dismiss on Iqbal/Twombley grounds, wherein the police officers at issued were and prosecuted for falsifying evidence, the Honorable Jack B. Weinstein wrote:

'Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police        Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration— through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department—there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.'

b) <u>McMillan v. City of New York</u>, 04-cv-3990 (FB)(RML) (E.D.N.Y.)(officers fabricated evidence against an African-American man in Kings County and initiated drug charges against him, despite an absence of an quantum of suspicion);

c) <u>Richardson v. City of New York</u>, 02-CV-3651 (JG)(CLP) (E.D.N.Y.)(officers fabricated evidence including knowingly false sworn complaints, against an African-American man in Kings County and initiated drug charges against him, despite an absence of any quantum of suspicion);

144.    The existence of the aforesaid unconstitutional customs and practices, specifically with regard to the practice or custom of officers lying under oath, falsely swearing out criminal complaints or otherwise falsifying or fabricating evidence, are further evidenced, inter alia, by the following:

a) Morgan Cloud, The Dirty Little Secret, 43 EMORY L.J. 1311, 1311-12 (1994) ("Judges, prosecutors, defense lawyers, and repeat offenders all know that police officers lie under oath."); Jerome H. Skolnick, Deception by Police, CRIM. JUST. ETHICS, Summer/Fall 1982, at 40, 42 (concluding that police "systematic[ally]" perjure themselves to achieve convictions); ALAN M. DERSHOWITZ, THE ABUSE EXCUSE 233 (Hachette Book Group 1994) (suggesting that "recent disclosures about rampant police perjury cannot

possibly come as any surprise" to those who have practiced criminal law in state or federal courts); ALAN M. DERSHOWITZ, THE BEST DEFENSE xxi-xxii (Random House 1983) ("Almost all police lie about whether they violated the Constitution in order to convict guilty defendants."); Deborah Young, Unnecessary Evil: Police Lying in Interrogations, 28 CONN. L. REV. 425, 427 (1996) (asserting that "the reported cases of police lying represent only a fraction of the actual cases in which police lying occurred"); David Kocieniewski, Perjury Dividend-A Special Report, N.Y. TIMES,   Jan.5, 1997, at A1 (noting that according to one New York police officer, "lying under oath was standard procedure"); Lie Detectors Could Curb Police Perjury, USA TODAY, Aug. 1, 1996, (Magazine), at 13 ("[M]any experienced trial lawyers have said they believe police officers frequently lie on the stand."); Joseph D. McNamara, Has the Drug War created an         Officer Liars' Club?, L.A. TIMES, Feb. 11, 1996, at M1 (noting recent perjury scandals have surfaced in police departments in Los Angeles, Boston, New Orleans, San Francisco, Denver, New York, and other large cities; and stating "[H]undreds of thousands of law-enforcement officers commit felony perjury every year testifying about drug arrests.").

b) The Mollen Commission concluded that police perjury and falsification of official records

is probably the most common form of police corruption facing the criminal justice system.

It concluded:

Regardless of the motives behind police falsifications, what is particularly troublesome about this practice is that it is widely tolerated by corrupt and honest officers alike, as well as their superiors. Corrupt and honest officers told us that their supervisors   knew or should have known about falsified versions of searches and arrests and never questioned them.1 {…} What breeds this tolerance is deep-rooted perception among many officers of all ranks within the Department that there is nothing really wrong with compromising the facts to fight crime in the real world. Simply put, despite devastating consequences of police falsifications, there is a persistent belief among officers that it is necessary and justified, even if it is unlawful. As one dedicated officer put it, police         officers often view falsification as, to use his words, "doing God's work" – doing whatever it takes to get the suspected criminal off the streets. This is so entrenched, especially in high-crime precincts, that when investigators confronted one recently arrested officer with evidence of perjury, he asked in disbelief, "What's wrong with that? They're guilty."*See,* Mollen Commission Report pgs 36-41.

145.    The existence of the aforesaid unconstitutional customs and policies, specifically with regard

to "productivity goals," may be further inferred from the following: Deputy Commissioner

Paul J. Browne has repeatedly admitted that NYPD commanders are permitted to set

"productivity goals."8

---

8 Jim Hoffer NYPD Officer claims pressure to make arrests WABC·TV Eyewitness News, March 22010, available at http:J/abclocal.go.com/Wabc/story?section=news/investigators&id=73053S6 ("Police Officers like others who

146.    The existence of the aforesaid unconstitutional customs and practices, specifically with

regard to the failure to supervise, train, instruct, and discipline police officers, encouraging

their misconduct, and exhibiting deliberate indifference towards the constitutional rights of

persons with whom officers come into contact are further evidenced, inter alia, by the

following:

a) In response to the Honorable Judge Weinstein's ruling of November 25, 2009 in
Colon v. City of New York, 09-CV-00008 (E.D.N.Y.), in which he noticed a "widespread...
custom or policy by the city approving illegal conduct" such as lying under oath and false
swearing, NYPD Commissioner Raymond Kelly acknowledged, "When it happens, it's not
for personal gain. It's more for convenience."

b) Regarding Defendant City's tacit condonement and failure to supervise, discipline
or provide remedial training when officers engage in excessive force, the Civilian
Complaint Review Board is a City agency, allegedly independent of the NYPD, that is
responsible for investigating and issuing findings on complaints of police abuse and
misconduct. When it does, however, Commissioner Kelly controls whether the NYPD
pursues the matter and he alone has the authority to impose discipline on the subject
officer(s). Since 2005, during Kelly's tenure, only one quarter of officers whom the CCRB
found engaged in misconduct received punishment more severe than verbal "instructions."
Moreover, the number of CCRB-substantiated cases that the NYPD has simply dropped
(i.e., closed without action or discipline) has spiked from less than 4% each year between
2002 and 2006, to 35% in 2007, and approximately 30% in 2008. Alarmingly, the NYPD has
refused to prosecute 40% of the cases sent to it by the CCRB in 2009.  As a result, the
percentage of cases where the CCRB found misconduct but where the subject officers were
given only verbal instructions or the matter was simply dropped by the NYPD rose to 66%
in 2007. Substantiated complaints of excessive force against civilians accounted for more
than 10% of the cases that the NYPD dropped in 2007 and account for more than 25% of
cases dropped in 2008.9

147.    The existence of the above-described de facto unlawful policies and/or well-settled and

widespread customs and practices is known to, encouraged and/or condoned by supervisory

and policy-making officers and officials of the NYPD and defendant **THE CITY OF**

**NEW YORK**, including without limitation, the Police Commissioner.

148.    The actions of Defendants, resulting from and taken pursuant to the above-mentioned de

facto policies and/or well-settled and widespread customs and practices of the City, are

---

receive compensation are provided productivity goals and they are expected to work").
9 Daily News, Editorial: City Leaders Must Get Serious About Policing the Police, August 20, 2008.

implemented by members of the NYPD engaging in systematic and ubiquitous perjury, both oral and written, to cover up federal law violations committed against civilians by either themselves or their fellow officers, supervisors and/or subordinates. They do so with the knowledge and approval of their supervisors, commanders and Commissioner who all: (i) tacitly accept and encourage a code of silence wherein police officers refuse to report other officers' misconduct or tell false and/or incomplete stories, inter alia, in sworn testimony, official reports, in statements to the CCRB and the Internal Affairs Bureau ("IAB"), and in public statements designed to cover for and/or falsely exonerate accused police officers; and (ii) encourage and, in the absence of video evidence blatantly exposing the officers' perjury, fail to discipline officers for "testilying" and/or fabricating false evidence to initiate and continue the malicious prosecution of civilians in order to cover-up  civil  rights  violations perpetrated by themselves, fellow office supervisors and/or subordinates against those civilians.

149.   All of the foregoing acts by defendants deprived Plaintiff of his federally protected rights, including, but limited to, the constitutional rights enumerated herein.

Defendant **THE CITY OF NEW YORK** knew or should have known that the acts alleged herein would deprive Plaintiff of his rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

150.   Defendant **THE CITY OF NEW YORK** is directly liable and responsible for the acts of Defendants, as it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules    and regulations of the City and NYPD, and to require compliance with the Constitution  and laws of the United States.

151.   Despite knowledge of such unlawful de facto policies, practices, and/or customs, these

supervisory and policy-making officers and officials of the NYPD and the **THE CITY OF NEW YORK**, including the Commissioner, have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such polices, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead approve and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effects of said policies, practices and/or customs or the constitutional rights of persons in the City of New York.

152. The aforementioned Defendant's **THE CITY OF NEW YORK** policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the police misconduct detailed herein. Specifically, pursuant to the aforementioned City  policies, practices and/or customs, Defendants felt empowered to arrest Plaintiff without probable cause and then fabricate and swear to a false story to cover up their blatant violations of Plaintiff's constitutional rights.

153. Pursuant to the aforementioned **THE CITY OF NEW YORK** policies, practices and/or customs, the officers failed to intervene in or report Defendants' violations of Plaintiff's rights.

154. Plaintiff's injuries were a direct and proximate result of the defendant **THE CITY OF NEW YORK**'s wrongful de facto policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of the defendant **THE CITY OF NEW YORK** to properly supervise, train and discipline their police officers.

155. As a result of the foregoing, Plaintiff was deprived of his liberty, suffered specific physical injury,  psychological injury and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

**WHEREFORE**, Plaintiff demands the following relief jointly and severally against all of the

Defendants:

a.    Compensatory damages;

b.    Punitive damages;

c.    Declaratory relief;

d.    Injunctive relief;

e.    The convening and empanelling of a jury to consider the merits of the claims

      herein;

f.    Costs and interest and attorneys' fees;

g.    Such other further relief as this court may deem appropriate and equitable.


Dated:        New York, New York
              May 17, 2016


                                   Respectfully submitted,

                                   **NOVO LAW FIRM, PC**
                                   *Attorney for Plaintiff*

                                   By: Ellie A. Silverman, Esq. (4701868)
                                   299 Broadway, 17th Floor
                                   New York, New York 10007
                                   (212) 233-6686
                                   **File No. 08-5390**
                                   ellies@novolawfirm.com